IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW BELCHER, Individually And On Behalf of All Similarly Situated Persons,<br>    Plaintiff,<br><br>v.<br><br>SCHLUMBERGER TECHNOLOGY CORPORATION,<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br>CIVIL ACTION NO. 4:15-CV-2429<br><br><br><br>JURY DEMANDED |

### JOINT MOTION FOR CONFIDENTIAL APPROVAL OF SETTLEMENT

Plaintiff Matthew Belcher, Individually and On Behalf of All Similarly Situated Persons, and Defendant Schlumberger Technology Corporation ("Parties") file this Joint Motion for Confidential Approval of Settlement. In support thereof, the Parties respectfully show the Court as follows:

### I.     INTRODUCTION

Plaintiff Matthew Belcher ("Plaintiff" or "Belcher") and Defendant Schlumberger Technology Corporation ("Defendant" or "Schlumberger") have reached a settlement of the pending dispute concerning unpaid overtime claims under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA") and/or applicable state law.

Plaintiff Belcher filed this lawsuit as a Fair Labor Standards Act collective action on August 21, 2015. The central allegation in Plaintiff's complaint was the non-payment of overtime due to Schlumberger's classification of Plaintiff and pressure control operators as exempt. Instead of paying overtime to Plaintiff and the other operators, Schlumberger paid a salary plus a day rate for each day spent in the field. Schlumberger denied the Plaintiff's

allegations, and contended that Plaintiff and other putative class members were properly classified as exempt.

Following limited discovery, the Court granted conditional certification of a collective action on July 13, 2016, and fifty-two individuals opted into this case. During discovery, Schlumberger provided the pay records for the Plaintiffs. Using these records, the Plaintiff calculated the damages he believed would be available to this class of employees during the applicable time period covered by this lawsuit. Schlumberger denied the Plaintiffs were entitled to any damages because the putative class members were properly classified as exempt.

Over the course of six months, the Parties actively discussed resolution. Fortunately, the Parties reached an agreement to resolve this case. Now the Parties request that the Court approve this settlement. The final terms of the settlement are reflected in the settlement agreement being filed seprarately. The terms of the settlement are confidential and, thus, the settlement agreement is being filed under seal.

## II. ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for alleged unpaid overtime wages brought pursuant to the FLSA and/or applicable state law, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* Because the FLSA "makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay." *Id.* "Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages." *Id.* "Courts therefore have refused to enforce wholly private

settlements." *Id., citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).[1]

Instead, most courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit). Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn Foods*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court should "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982). The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

The Parties agree the settlement is fair, reasonable and represents a reasonable compromise of the disputed issues in this case.

---

[1] Based on *Martin v. Spring Break 83 Productions, LLC,* the continued need for court approval of settlement agreements is questionable. 688 F.3d 247 (5th Cir. 2012). In an abundance of caution, approval is sought here.

3

**A.    The terms of the settlement provide for substantial compensation for the claims raised in the lawsuit.**

The Parties' Settlement is fair and reasonable because it provides the Plaintiffs and Class Members with a recovery while facing significant risks from future litigation. Additionally, the recovery provides compensation to Plaintiffs' Counsel for attorneys' fees and costs.

The recovery reached in the settlement agreement is significant given that the Parties disagreed over the merits of the case. The Plaintiff argued that the Class Members were not exempt from overtime whereas Defendant maintained that they were properly classified as exempt. Further, the Parties further disagreed on whether the Plaintiff could satisfy his burden to demonstrate that Defendant acted willfully, which in turn affects whether Plaintiff could recover damages for two (2) years or three (3) years prior to the filing of the Complaint. *See* 29 U.S.C. § 255. Similarly, there were disputed issues as to whether Schlumberger could establish that it classified the putative class in good faith, which called into question whether liquidated damages were available. *Id.*

Moreover, the Parties disagreed as to whether the Class Members were intended to compensate for 40 hours or whether the fluctuating workweek method of calculating overtime could be applied retroactively. The Parties also had significant disagreement over the number of hours worked by the Class Members.

Due to the directly conflicting factual allegations and differing views on the applicable law, Plaintiff believes that the amounts reflected in the Settlement Agreement are in the best interest of the Class Members.

More importantly, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. In exchange for these payments, the Plaintiff

4

and Class Members agree to release Defendant from any and all claims they may have related to wages, back pay, and/or overtime under federal or state law.

**B.     The settlement is fair and reasonable in light of the uncertainty of the outcome.**

The proposed Settlement Agreement is fair to the Plaintiff and Class Members because it provides for a settlement based upon the salaries and bonuses that the Plaintiff and Class Members were paid with an estimate of the number of overtime hours worked. The amount of overtime that was worked by each Class Member was based on a calculation of hours using estimates based on the typical hitch of each class member.

Defendant produced the dates of employment and payroll data for the Plaintiff and Class Members for the entire statutory period. Plaintiff's Counsel then analyzed the data to determine the amounts that Counsel believes would be owed per Class Member if Plaintiff were successful in establishing liability.

Under the Settlement, each Plaintiff will receive an amount from the Settlement fund that is based upon each Plaintiff's proportionate share of the total damages owed. That is, hypothetically, if a Plaintiff is owed $2,000 and the total amount owed to the class is $100,000, his proportionate share of the Settlement is two percent (2%) and he will receive that percentage of the Settlement fund after fees and costs have been deducted. The pro rata allocations to Plaintiffs are set forth on Exhibit A to the Settlement Agreement.

The Settlement Agreement also sets forth that fifty percent (50%) of all payments constitute wages, subject to reporting on W-2 deductions for payroll taxes. Defendant will be responsible for the employer portion of all such payroll taxes and withholdings. The Parties further agree that the remaining fifty percent (50%) constitutes payments for liquidated damages,

5

prejudgment interest, penalties and/or other consideration for each Plaintiff's release and will be reported on IRS Form 1099.

### C.  The attorneys' fees sought are fair and reasonable.

Additionally, the amount of attorneys' fees are reasonable and fair.  The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).  Plaintiff's counsel investigated the claims, engaged in significant motion practice relating to certification, analyzed thousands of pages of pay data, engaged in discovery, managed communication with all Class Members, and performed other work.

Furthermore, the legal theories involved required substantial expertise in the wage and hour field.  Many attorneys would have not understood the nuanced arguments asserted, nor would have been able to discern whether the Plaintiff even had a viable claim.  Additionally, other lawyers may not have had the expertise to calculate the damages on behalf of the Plaintiffs in this case.  Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Class.

Ultimately, the attorneys' fees requested by Plaintiff's Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing the potential fees.  As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.  Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation.  At every step of the litigation, Defendant could have succeeded.  Therefore, the

Class Members were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here.

### D. The settlement should be approved by the Court.

The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). As well, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of comprehensive discussions, as well as exhaustive and hard fought negotiations.

All that said, there can be no question that this Settlement Agreement represents fair value for the workers. Numerous workers will receive back wages and penalty damages under

federal law without the risk or expense of trial. Indeed, the amounts recovered under the agreement are fair on both a collective and individual basis.

## III. CONCLUSION

The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendants' counsel. The settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, Plaintiff requests that the Court approve the FLSA settlement.

For the foregoing reasons, the Parties respectfully request that the Court enter an order approving the Parties' Settlement Agreement. A proposed order is attached for the Court's consideration.

The Parties further respectfully request that the Court maintain the confidentiality of the Settlement Agreement by allowing it to be filed under seal and not permitting any portion of the agreement or its terms to be disclosed publicly.[2]

        Respectfully submitted,

        */s/ William R. Stukenberg*
        William L. Davis
        Attorney-in-Charge
        State Bar No. 05563800
        Federal I.D. No. 20218
        JACKSON LEWIS, P.C.
        500 N. Akard, Suite 2500
        Dallas, TX 75201
        Telephone: (214) 520-2400
        Facsimile: (214) 520-2008

---

[2] In the event that the Agreement is not approved confidentially, Schlumberger has the option of voiding the Agreement in its entirety after working in good faith with Plaintiff to rectify any concerns raised by the Court. As a result, the Parties respectfully request that the Agreement remain sealed even if the Court does not approve the Agreement confidentially.

Email: DavisW@jacksonlewis.com

William R. Stukenberg
Texas State Bar No. 24051397
S.D. Tex. Bar No. 55792
JACKSON LEWIS, P.C.
Wedge International Tower
1415 Louisiana, Suite 3325
Houston, Texas 77002
Telephone: (713) 650-0404
Facsimile: (713) 650-0405
Email: william.stukenberg@jacksonlewis.com

**ATTORNEYS-IN-CHARGE FOR DEFENDANT SCHLUMBERGER TECHNOLOGY CORPORATION**

*/s/ Josef F. Buenker*
Josef F. Buenker
TBA No. 03316860
THE BUENKER LAW FIRM
jbuenker@buenkerlaw.com
2060 North Loop West, Suite 215
Houston, Texas 77018
713-868-3388 Telephone
713-683-9940 Facsimile

OF COUNSEL:
Vijay Pattisapu
TBA No. 24083633
S.D. Tex. No. 1829615
vijay@buenkerlaw.com
THE BUENKER LAW FIRM
2060 North Loop West, Suite 215
Houston, Texas 77018
713-868-3388 Telephone
713-683-9940 Facsimile

**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing *Joint Motion to Approve Settlement* was electronically filed with the clerk of the U.S. District Court, Southern District of Texas, Houston Division, on October 24, 2017, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record.

*/s/ Josef F. Buenker*
Josef F. Buenker